Nathaniel Miller et al., Respondents, *v.* The Long Island Railroad Company, Appellant.

In an action to recover for an injury to the freehold, plaintiff must show such title as entitles him to damages, not to the possession merely, but to the freehold.

Where the land has not been occupied, improved or inclosed, and reliance is placed solely upon paper title, the proof must be of a chain of title from the original patentee or donee.

A deed from a person not in possession, or not shown to be the owner, establishes no title.

The possession unaccompanied by paper title, requisite to furnish the presumption of ownership sufficient to maintain the action, must be actual.

In case of land unoccupied, unimproved and uninclosed, such possession may be made out by showing that the lot is kept as, and is a wood-lot of suitable size for an improved farm, and that the owner of the farm has habitually for some years cut thereon his firewood, saw-logs, fencing and building timber.

Evidence of merely occasional entries at long intervals upon the lot, where it is not parcel of an improved farm or connected with one, is not sufficient to establish the reqiusite possession.

So, also, payment of taxes on the lot is no evidence of possession.

*It seems,* that in the case of uninclosed, unoccupied woodland it is incompetent to ask a witness whether he was in possession of the land; the facts should be shown which in law constitute possession.

*Miller* v. *L. I. R. R. Co.* (9 Hun, 194) reversed.

(Argued November 14, 1877 ; decided December 11, 1877.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial depertment, affirming a judgment in favor of plaintiffs, entered upon the report of a referee. (Mem. of decision below, 9 Hun, 194.)

The nature of the action and the facts are sufficiently set forth in the opinion.

*Robert S. Green,* for appellant. This action could only be maintained by proving actual possession, or such possession as the legal title draws to it. (*Gardner* v. *Hart,* 1 N. Y., 528; *Aiken* v. *Buck,* 1 Wend., 466.) The lands being wild, uninclosed and uncultivated, there could be no actual possession, only such as the title drew to it, or as was established by open, notorious and continued acts of ownership. (*Doe ex dem. Saxton* v. *Hunt,* Spencer, 487; *Ewing* v. *Burnet,* 11 Pet., 41; *Ellicott* v. *Pearl,* 10 id., 412; *Thistle* v. *Frostburg Coal Co.,* 10 Md., 129.) To render a title-deed admissible in evidence in actions like the present, it is necessary to identify the land described in the deed with that involved in the suit. (*Lane* v. *Gould,* 10 Barb., 254.) Evidence of the witnesses' estimate of the damages was incompetent. (Sedg. on Dam., 589, 590; *Cook* v. *Brockway,* 21 Barb., 331.) The proper measure of the damages was the value of the trees as they stood upon the land. (*Whitbeck* v. *N. Y. C. R. R. Co.,* 36 Barb., 644.)

*J. Lawrence Smith,* for respondents. The damages sustained were the necessary consequence of the fire communicated first by defendant's locomotive. (*Field* v. *N. Y. C. R. R. Co.,* 32 N. Y., 339; *Webb* v. *R. & W. R. R. Co.,* 49 id., 420; *Lowery* v. *W. Un. Tel. Co.,* 60 id., 198, 204.) Proof that the several claimants were in possession of the lands in question was sufficient to warrant a recovery for damages sustained without proof of a written title. (*Cary* v. *Holt,* 2 Stra., 1228; *Harker* v. *Bribeck,* 3 Burr., 1556, 1563; *Graham* v. *Peet,* 1 East, 244; *Harper* v. *Charlesworth,* 4 B. & C., 573; *Machin* v. *Geortner,* 1 T. & C., 587; *People* v. *Leonard,* 11 J. R., 504; *Day* v. *Alverson,* 9 Wend., 223; *Brant* v. *Aitken,* 15 id., 522; *Brown* v. *Bowen,* 30 N. Y., 520; 1 C. & H. notes, 353; *Parsons* v. *Brown,* 15 Barb., 590; *Munroe* v. *Merchant,* 28 N. Y., 9; 14 Barb., 42; 4 id., 592; 34 id., 586; 66 id., 386; *Caswell* v. *Davis,* 58 N. Y., 223; *Chester* v. *Dickerson,* 54 id., 1; *Pease* v. *Smith,* 61 id., 480; *Craw* v. *Craw,* 12 Wend., 41; *Underhill* v. *Pomeroy,* 2 Hill, 603; *People* v. *Bodine,* 1 Den., 313; *Merritt* v. *Seaman,* 6 Barb., 334; *Murphy* v. *People,* 4 Hun, 104.) It was proper for the witnesses to estimate the damages, as they had peculiar sources of knowledge. (*Lamoure* v. *Caryl,* 4 Den., 370; *Smith* v. *Wilcox,* 4 Hun, 411.) The value of the woodland as established by the evidence was determined by the growth of the wood upon it. (*Clark* v *Bayard,* 5 Seld., 183; *Roberts* v. *Knapp,* 35 N. Y., 91; *Whitbeck* v. *N. Y. C. R. R. Co.,* 36 Barb., 644; *Passinger* v. *Thorburn,* 34 N. Y., 634; *Terpenning* v. *Corn. Ex. Ins. Co.,* 43 id., 279.)

EARL, J. This action was brought to recover damages caused to certain lands upon Long Island by a fire set by a passing engine upon defendant's road. The fire swept over a large tract of land mostly uninclosed and unimproved, lying contiguous to the railroad. The land consisted of fifty-four different parcels claimed to have belonged to as many different owners, the plaintiffs, and others who, prior to the

commencement of the action, assigned their claims to the plaintiffs.    It is not contested here but that the defendant is responsible for the damage done by the fire.    But during the progress of the trial, the defendant's counsel took many exceptions to the rulings of the referee on questions of evidence, and he also excepted to the findings of the referee upon questions of ownership and possession of the lands, and the amount of damage done.    And upon the argument before us, he called our attention to many exceptions which he claims to have been well taken.

The damages claimed and allowed by the referee were mostly to freehold interests, and hence, to uphold the recovery the plaintiffs must have shown such titles in the several parcels of land as to entitle them to damages, not merely to the possession, but to the freeholds.    The plaintiffs could prove their titles, either by conveyances showing paper title, or by such possession as would be presumptive evidence of title. When reliance is placed solely upon paper title, the land not having been occupied, improved or inclosed, the proof must be of a chain of title from the original patentee or donee.    A deed from a person not in possession, or not shown to be the owner, establishes no title.    (*Gardner* v. *Hart*, 1 N. Y., 528.)    The possession, unaccompanied with paper title, requisite to furnish the presumption of ownership sufficient to maintain this action must be actual; nothing less will answer. When lands are unoccupied, unimproved and uninclosed, it is quite difficult to make out such possession.    It can be done by showing that the lot was kept as a wood-lot of suitable size for an improved farm, and that the owner of the farm habitually for some years cut thereon his firewood, saw-logs and fencing and building timber.    (*Machin* v. *Geortner*, 14 Wend., 239.)    But it is believed that there is no authority, and certainly our attention has been called to none, for holding that occasional entries, at long intervals of time, upon such a lot not parcel of an improved farm, or connected with one, furnish evidence of the requisite possession.

It was objected before the referee, and the claim is made

here, that the plaintiffs did not show title to much of the land damaged, by either of the methods above indicated. I believe this claim to be well founded. There was no attempt on the trial, in the case of any parcel of land, to prove a chain of title, and as to more than half of the parcels, there was no attempt to prove any paper title whatever. In the case of nearly all the deeds introduced, there was no proof that the grantors ever owned or possessed the lands conveyed. Hence it is clear that there was failure to show paper title to the lands damaged. A deed not sufficient to convey a valid title is sufficient to lay the foundation of an adverse possession. And under such a deed, the grantee may have a constructive possession which will enable him to maintain ejectment or trespass against a stranger to the true title. If one takes a deed of a farm, partly improved and partly uninclosed woodland, and he enters into possession of the improved land and occupies it, he will be deemed in possession of the woodland, if of suitable size, to be kept for the balance of the farm, so that he could maintain trespass or ejectment, and ultimately perfect a title by adverse possession. (*Jackson* v. *Woodruff*, 1 Cowen, 236; *Munro* v. *Merchant*, 28 N. Y., 9; *Thompson* v. *Burhans*, 61 id., 52.) But here the parcels being nearly all uninclosed, unimproved woodland, there was, as to most of them, no proof whatever that they were parcels of improved farms, or that they were used habitually in connection with improved lands for firewood and timber. Hence the plaintiffs to uphold their judgment must rely wholly upon their claim of possession. As to most of the parcels there was an entire failure to show possession within any rule that has ever been laid down in such cases. As to some of the parcels, there was no proof of any act of possession. As to others there was simple proof of cutting timber upon one or more occasions, and as to many of those the alleged owners did not even hold deeds. It cannot be the law that one can enter upon uninclosed woodland, and claim to own it, and cut wood thereon once or a number of times, and thus establish a footing that will enable him to

maintain an action of trespass against any other person subsequently doing the same acts upon the same lands.   Neither is it the law that one can take a deed of such land from one not shown to own it, and then enter and take wood from the land once or a number of times, and thus acquire a sufficient possession to maintain the action.

During the progress of the trial, the plaintiffs and their assignors testified that they owned the lands.   This kind of evidence was objected to on the part of the defendant as incompetent, and the referee simply received it to locate the lands.   Of course, such parol evidence proved nothing on the question of title.   The same witnesses were allowed, against objection that it was incompetent, to testify generally, that they were in possession of the lands.   I am inclined to think that in the case of uninclosed, unoccupied woodland, it is incompetent to ask a witness whether he was in possession of the land.   The peculiar facts should be shown which in law in such case constitute possession.   But if the witness should, to such a question, answer that he was in possession, it would prove nothing, if the facts also testified to showed that he was not in possession.

I will not take the time to specify all the cases in which plaintiffs failed to show title in themselves or their assignors to the lands claimed to have been damaged by the fire.   It would make this opinion too long, and would serve no good purpose to do so.   But I will call attention to a few cases which are typical of many others.   As to the parcel claimed by plaintiff Miller : He did not attempt to prove any paper title.   He testified that he had owned the parcel consisting of 180 acres for twelve or fifteen years before the fire.   He was then asked this question : "What acts had you exercised over that property during that time ?"   He answered: "Cut wood on parts of it and fencing stuff and cordwood."   This was all the evidence as to acts of possession.   There was no proof that this was part of any improved farm, and there was nothing to show how many times these acts were repeated.   As to the parcel claimed by plaintiff Homan:.

He claimed seven acres. There was no proof of any acts of possession. There was a deed to him put in evidence from John Roe and wife, dated in 1845, but there was no evidence that the grantors ever owned or possessed the land. As to the parcel claimed by plaintiff Mills: He claimed that 255 acres of his land were burned over. He produced a deed for only 124 acres of it, but gave no evidence that his grantor ever owned it, or that he or his grantor ever performed any act whatever of ownership or possession upon the land, except to pay the taxes. And payment of taxes has no significance upon this question. (*Thompson* v. *Burhans, supra.*) From the balance of the 225 acres, he testified that he had cut and taken wood repeatedly. It was not shown when, nor for what purpose he had taken the wood, nor that this large quantity of woodland was used or connected with any improved farm. As to the claim of Charles G. Hankins : He claimed sixteen acres which he testified he bought in 1837, and when asked " what acts of ownership had you exercised over it previous to the fire ?" he answered : "That he had cut and carted wood from it before the fire, and had paid taxes on it." He produced no deed. As to the claim of Joseph Carman: He claimed thirty acres, and testified that he had owned it thirty years. He produced no deed, and on the point of possession simply testified that some wood was cut off from the lot before the fire. As to the claim of Bartlett Hankins: He claimed that twelve acres of his land were burned over, which he had owned a number of years. He produced no deed, and testified to no acts of ownership or possession. As to the claim of Bryant N. Overton: The plaintiffs proved that his wife owned the land, and as to him simply showed that he had cut and taken some wood from it. This did not show that he had such an interest as would enable him to recover for an injury to the freehold, and yet the referee allowed for the damage to the 170 acres on his account.

These cases I have taken at random, and they are sufficient to illustrate my argument. If I am right in holding that

there was a failure to show sufficient title as to these parcels, then there was a similar failure as to most of the other parcels. It cannot be said that there was failure on the part of the defendant to make sufficient objection to the proofs of title. The parol evidence of title was all objected to as incompetent, as well also as the general evidence of possession, and exceptions were filed to the several findings of the referee as to the ownership of each parcel.

Without, therefore, examining other allegations of error, we conclude that this judgment must be reversed. The errors are so numerous, running through the whole case and affecting so many of the parcels of land, that we cannot modify the judgment by allowing it to stand as to the damages to any of the parcels. This recovery may be meritorious; and in view of the large expense which must be incurred in a new trial, we would gladly affirm it, if we could, without disregarding plain rules of law the observance of which is quite essential in the administration of justice.

Judgment reversed, and new trial granted, cost to abide event.

All concur, except Folger and Miller, JJ., not voting. Judgment reversed.